The STATE of Ohio, Appellee,

v.

YARBER, Appellant.

[Cite as *State v. Yarber* (1995), 102 Ohio App.3d 185.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA94–08–019.

Decided March 27, 1995.

*Rebecca J. Ferguson,* Preble County Prosecuting Attorney, and *Michelle L. Gramza,* Assistant Prosecuting Attorney, for appellee.

*Stephen R. Bruns,* for appellant.

KOEHLER, Judge.

Defendant-appellant, James M. Yarber, was indicted on three counts of rape and one count of gross sexual imposition. A jury trial was held on July 25 and 26, 1994, in which appellant was found not guilty on one count of rape and guilty on the other two counts of rape and the count of gross sexual imposition. From this judgment, appellant now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"Appellant's conviction should be reversed and he should be granted a new trial because he did not receive effective assistance of counsel."

Assignment of Error No. 2:

"The trial court erred in admitting hearsay statements of the complaining witness."

Assignment of Error No. 3:

"The trial court committed plain error in allowing the complaining witness' counselor to testify that his behavior was typical of child victims of sexual abuse."

In his first assignment of error, appellant contends that he should be granted a new trial because he did not receive effective assistance of counsel. Trial counsel's performance will not be regarded as ineffective unless appellant can show that counsel's representation has fallen below an objective standard of reasonable representation and, in addition, prejudice arises from such ineffective representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Lowman* (1992), 82 Ohio App.3d 831, 613 N.E.2d 692. In order to demonstrate prejudice, appellant must show that there is a reasonable probability that, but for counsel's ineffective representation, the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697–698. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* An accused has been denied effective assistance of counsel where defense counsel's strategy has been so outside the realm of legitimate trial strategy as to make ordinary trial counsel "scoff" at the hearing of it. *State v. Burgins* (1988), 44 Ohio App.3d 158, 160, 542 N.E.2d 707, 709–710.

In this case, appellant's counsel, William F. Clinard, provided ineffective assistance throughout the proceedings. Although not argued by appellant, a review of the record indicates that before his case in chief, Clinard asked the court to strike certain portions of appellant's typed statement due to appellant's lack of capacity. This argument, as noted by the trial court, should have been made in a motion to suppress, which Clinard failed to file in this proceeding. It was the obligation of the trial court to determine whether the appellant, because of his speech impediment, third-grade level of education, and illiteracy, understood the rights he waived while giving his statement to police. See *State v. Garrett* (1991), 76 Ohio App.3d 57, 600 N.E.2d 1130. Because Clinard failed to file a motion to suppress, the trial court was denied the opportunity to determine whether appellant understood his rights.

Further, Clinard consistently failed to object to improper leading questions asked by the prosecution and to questions that were previously asked and

answered. During cross-examination of the alleged victim, Clinard repeatedly asked, in effect, "[i]t never happened in the first place did it?" Each time this question was asked, it solicited the same response, "[i]t happened." Despite this response, Clinard repeatedly asked the question, and the witness kept confirming to the jury that "it happened." Not only was the depth of cross-examination insubstantial, it helped the prosecution to prove its case.

Appellant was charged with one count of gross sexual imposition and three counts of rape. During cross-examination of the alleged victim, Clinard failed to institute a legitimate strategy. Clinard only lightly touched upon one of the four alleged incidents and failed to touch upon any specifics of the alleged incidents. He only questioned the alleged victim about his failure to immediately advise someone that the incidents occurred. Clinard did not question the alleged victim concerning inconsistencies in his statements or discuss these inconsistencies during closing argument.

Prior to the direct examination of Liz Moore, a counselor with the Preble County Counseling Center, the trial judge specifically warned the prosecution that "the jury is not entitled to know her opinion as to whether or not she believes [the victim]." The prosecution complied with this court order. However, Clinard questioned Moore in such a manner that it prompted her to respond, "[W]ell I can tell you other reasons why I believe what he has said." After receiving this response, Clinard asked Moore, "Have you got any more facts [other] than what you've told us already?" The court then asked Clinard to approach the bench. After instructing Clinard that his questioning would elicit all the information that the court indicated it would not let the prosecution elicit, Clinard finished his cross-examination. Again, Clinard's cross-examination was insubstantial, and the responses elicited helped the prosecution prove its case.

Throughout the course of the trial proceedings, Clinard appeared confused. Clinard made objections and asked questions that were confusing and made no sense. Several times during the trial the state made objections to questions asked by Clinard. The court would ask for a response, but Clinard would simply ignore the court and proceed with another question.

The record indicates Clinard failed to establish a coherent trial strategy. Although Clinard did at times suggest that there may have been some type of family conspiracy arising out of a loan made by appellant to the alleged victim's family, Clinard failed to establish exactly what this conspiracy was and never provided the jury with any testimony or argument to explain how this dispute resulted in the allegations made by the alleged victim.

The record in this case indicates that Clinard's representation fell below an objective standard of reasonable representation. As stated in *Strickland, supra,* this court must grant great deference to counsel's strategic choices at trial and

will not second-guess the trial tactics of counsel. However, Clinard's complete dereliction of duty totally undermines confidence in the outcome of the trial. See *Strickland; Lowman, supra.* Trial counsel's "strategy" was so far out of the realm of legitimate trial strategy, ordinary trial counsel would "scoff" at the hearing of it. See *Burgins, supra.* Accordingly, appellant's first assignment of error is sustained.

In his second assignment of error, appellant contends that the trial court erred in admitting hearsay statements. Appellant argues that several times during the course of the trial, hearsay statements of the alleged victim ("Bobby D.") were improperly admitted.

 Hearsay is any statement, other than one which is made by the declarant at trial, which is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Generally, a statement is not hearsay if it is admitted to prove that the declarant made it rather than to prove its contents. *State v. Williams* (1988), 38 Ohio St.3d 346, 348, 528 N.E.2d 910, 914–915. However, where evidence is presented to a jury in order to bolster the credibility of a witness' testimony, the statement is hearsay because it is being offered to prove the truth of the matter asserted, *i.e.,* the testimony of the other witness. *Id.*

 During trial, Bobby D.'s cousin, Bandy Lees, was permitted to testify that Bobby D. told her that James Yarber had abused him. Lees testified as follows:

"*Q.* [By *CAROL PERRITT LINDSTROM,* Preble County Assistant Prosecuting Attorney] Do you recall the events of June 1993?

"*A.* Yes.

"*Q.* Did Bobby talk to you during that month?

"*A.* Yes, he did.

"*Q.* Did he talk to you about Mike [James] Yarber?

"*A.* Yes, he did.

"*Q.* Where did this conversation take place?

"*A.* Um we were camped out in my backyard.

"*Q.* In your backyard?

"*A.* Yes.

"*Q.* What time of day was it?

"*A.* It was later in the evening.

"*Q.* Was it light or dark?

"*A.* It was dark.

"*Q.* Did Bobby talk to you about what Mike had done to him?

"*A.* Yes. He had.

"*Q.* What did he say that Mike had done to him?

"*MR. CLINARD:* Objection. Hearsay.

"*MS. LINDSTROM:* Your Honor, we're asking for this testimony just to indicate when Bobby told—not necessarily for the truth of the matters which he stated.

"*THE COURT:* I'm going to overrule the objection. But all you need to establish is the general nature of that conversation. So that—in an effort to establish when. It's legitimate for that. It's not legitimate for that. It's not legitimate to establish everything he said to try and bolster what he said. So just generally the nature is all the Court will allow.

"*MS. LINDSTROM:* Ok. Bandy, do you understand what you've just said.

"*A.* Yes.

"*Q.* OK. Could you tell us generally what Bobby said.

"*A.* At that time it had just come out within our family about the abuse, and I did not know that none of them had found yet what was said, and he asked me about it, and I told him what I had said, and he told me that he had been abused too.

"*MR. CLINARD:* Again, objection, Your Honor. Hearsay. And then a motion to strike the testimony.

"*THE COURT:* Overruled. Overruled."

Further, Bobby D.'s uncle, James Lees, also was permitted to testify that Bobby D. told him he was molested by James Yarber. James Lees testified:

"*Q.* [By *MS. LINDSTROM*] Let's go back to June of 1993. Did Bobby come to you with a problem during that time?

"*A.* June? Uh well he didn't come to me. I set 'em all down cause it was brought out.

"*Q.* And what was brought out?

"*A.* All of this. And I set 'em all down and I asked 'em and he told me what had happened.

"*Q.* Very generally, what did Bobby tell you?

"*MR. CLINARD:* Objection, Your Honor. Hearsay.

"*THE COURT:* It's overruled. Again, it's admitted for the same purpose. The dates of the conversations, when things might have been reported and so on, and not for the content of the conversations.

"*MS. LINDSTROM:* Mr. Lees, very generally, what did Bobby talk to you about?

"A. About what had happened to him.

"Q. What is what happened?

"A. That he was molested. Played with.

"Q. By whom?

"A. By Mike.

"Q. Is that the Mike Yarber sitting in the courtroom?

"A. Yea. yea.

"Q. Could you point him out please?

"A. Right there.

"Q. Could you tell me what he's wearing?

"A. What is he wearing?

"Q. Right.

"A. A knit shirt.

"Q. What color?

"A. Grey.

"Q. Let the record reflect that Mr. Lees has pointed out the Defendant, James Michael Yarber. Did the family have a conference concerning Bobby's allegations?

"A. Yes.

"Q. Who got together?

"A. The—both mothers, me, Gina, Mike.

"Q. When you say both mothers, who do you mean?

"A. Raina and Phyllis. And a grandmother and all the kids.

"Q. Did Bobby tell—say anything to Mike that night?

"A. Say anything to Mike?

"Q. Yes.

"A. Yea. Yes, they all uh confronted him.

"Q. Now let's talk about Bobby. What did Bobby do?

"*MR. CLINARD:* Again Your Honor, leading question. Motion to strike. Objection.

"*THE COURT:* It's overruled.

"*MS. LINDSTROM:* Mr. Lees, what did Bobby do?

"*A.* He confronted Mike about what he done to him.

"*Q.* How did Mike respond?

"*A.* That he didn't do it.

"*Q.* How did Mike look when he said that?

"*A.* He looked guilty to me.

"*MR. CLINARD:* Objection. Motion to strike.

"*THE COURT:* I'm going to sustain that. You can describe, sir, his appearance, demeanor, things of that nature. Go ahead."

The state contends that in each case the statements were not offered for the truth of the matter asserted. Upon objection at trial, the state argued that the statements were offered to establish the time period in which Bobby D. made others aware of his allegations. We reject this argument as the tenor of the state's questioning makes it obvious that the objective was to bolster Bobby D.'s credibility. The testimony of these witnesses does not escape the classification of "hearsay" under Evid.R. 801(C). See *Williams, supra,* 38 Ohio St.3d 346, 528 N.E.2d 910.

■ At trial, the court also admitted the testimony of Linda Daily, acting director of Preble County Children's Services, concerning Bobby D.'s allegations. The record indicates that Daily did not interview Bobby D. concerning the abuse. Her testimony was based upon what she was told by others or read in the case file. Daily testified:

"*Q.* [By *MS. LINDSTROM*] Did Mr. Wick [a Preble County Children's Services caseworker] make notes concerning Bobby [D.]?

"*A.* Yes, he did.

"*Q.* Did he make notes concerning his first contact with Bobby?

"*A.* Yes, he did.

"*Q.* According to his notes when did that first contact occur?

"*A.* June 21, 1993.

"*Q.* And where did that first contact occur?

"*A.* At Children's Services office.

"*Q.* What was the nature of that contact?

"*A.* Bobby was interviewed about the allegations and if he had been abused.

"*Q.* Did Bobby identify the perpetrator—the person who had done these things to him?

"*A.* Yes, he did.

"*MR. CLINARD:* Again, objection. Your Honor. Hearsay.

"*THE COURT:* Response?

"*MR. CLINARD:* Motion to strike.

"*MS. LINDSTROM:* Your Honor, this is in the general nature of the allegations that Bobby reported. We are asking only that they be introduced for the purpose of saying that that's what Bobby reported. Not for the truth therein.

"*THE COURT:* When you say they, are you asking that the records be introduced, or these answers to the questions?

"*MS. LINDSTROM:* I'm asking that the answers to the questions be introduced.

"*THE COURT:* I'll overrule the objection as it pertains to the last question, which my understanding it was, did he identify who the perpetrator was and if so, who was it.

"*MS. LINDSTROM:* Your Honor, the State intends in going further than that.

"*THE COURT:* You may answer.

"*A.* He identified Mr. Yarber.

"*MS. LINDSTROM:* Mrs. Daily, did you also interview Bobby on occasion?

"*A.* I never interviewed him. I talked to him if he'd be sitting in the hallway, but I never did an interview.

"*Q.* Are the things that Bobby told you consistent with what Mr. Wick was told?

"*MR. CLINARD:* Again objection, Your Honor. Hearsay. Motion to strike.

"*THE COURT:* I'm going to sustain that objection. I think we've gone far enough.

"*MS. LINDSTROM:* In your contact Mrs. Daily [*sic*], with Bobby was his story consistent to you?

"*A.* We never talked about the abuse."

The state again argues the statements were not being admitted for the truth of the matter asserted. However, "[w]hile the reports may be used to clarify allegations in the complaint, they may not be used as proof or evidence of those allegations * * *." *Davis v. Trumbull Cty. Children Serv. Bd.* (1985), 24 Ohio

App.3d 180, 184, 24 OBR 270, 274–275, 493 N.E.2d 1011, 1016. Again, the tenor of the state's questioning makes it obvious that the objective was to bolster the minor child's credibility. Admission of this hearsay evidence was also contrary to Evid.R. 801. Accordingly, appellant's second assignment of error is sustained.

In his third assignment of error, appellant contends that the trial court committed plain error by allowing Liz Moore, Bobby D.'s counselor, to testify that his behavior was typical of child victims of sexual abuse. As this error was not raised at the time of trial, it must rise to the level of plain error before this court may reverse appellant's conviction. See Crim.R. 52(B). The standard for plain error is whether the substantial rights of the defendant were so adversely affected as to undermine the fairness of the guilt-determining process. *State v. Swanson* (1984), 16 Ohio App.3d 375, 377, 16 OBR 430, 432, 476 N.E.2d 672, 675. Plain error does not exist unless the outcome of the trial would have been different but for the error. *State v. Watson* (1991), 61 Ohio St.3d 1, 6, 572 N.E.2d 97, 103–104.

A review of the record indicates that Moore testified that Bobby D. was withdrawn when she first met with him but warmed up to her in later sessions and that this behavior was "typical" of other children she counseled. Moore testified only concerning Bobby D.'s actions when discussing the allegations of abuse; she never testified or inferred that Bobby D.'s behavior was consistent with victims of sexual abuse. However, as discussed earlier in appellant's first assignment of error, Moore, testifying as an expert witness stated, "Well I can tell you other reasons why I believe what he has said."

We have previously held in *State v. Davis* (1989), 64 Ohio App.3d 334, 345–346, 581 N.E.2d 604, 611–612, that an expert witness may not render an opinion as to the veracity or credibility of a witness because the opinion invades the fact-finding province of the jury and is not proper function of an expert witness. See, also, *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. We find that Moore's statement and Clinard's failure to object and request that it be stricken from the record undermined the fairness of the guilt-determining process and thus constituted plain error. Accordingly, appellant's third assignment of error is sustained. The judgment of the trial court is hereby reversed and remanded.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., concurs.

WILLIAM W. YOUNG, J., dissents.

FRED E. JONES, P.J., retired, of the Twelfth Appellate District, sitting by assignment.