OPINION
{¶ 1} Christopher Woullard appeals from his conviction for domesticviolence and the sentence imposed on that conviction pursuant to law.
 {¶ 2} Woullard was indicted on December 19, 2002 on one count ofdomestic violence, in violation of R.C. 2919.25(A). The offense, which isordinarily a first degree misdemeanor, was charged as a felony of thefifth degree pursuant to R.C. 2919.25(D) upon an allegation that Woullardhad a prior domestic violence conviction. A jury trial was held on April30, 2003 and May 1, 2003, during which the following evidence wasadduced.
 {¶ 3} Chandra Denise Williams testified that on December 2, 2002, sheand Woullard argued at their home at 1412 Salem, Fairborn, Ohio. The twohad been boyfriend and girlfriend "off and on" for approximately eightyears. The couple resided together with Williams' two children.
 {¶ 4} At approximately 5:00 p.m. on that day, Woullard picked upWilliams from her work at the Fairfield Commons Mall. It was apparent toWilliams that Woullard had been drinking. Upon arriving home, Williamsreceived a telephone call from her mother. Woullard, believing the callerwas someone else, became very angry and choked Williams. Fortunately,another man arrived at the home at the same time and Williams was able toleave the house with her younger son.
 {¶ 5} Williams went to her mother's house after picking up her olderson from his basketball game. She called home to see if Woullard wasstill there. No one answered the telephone, and she concluded thatWoullard had left the residence.
 {¶ 6} Williams, accompanied by her older son Michael and her sister,Lucreitica Razor, went to the residence to gather some of the boys' andher belongings. Upon stepping into her bedroom, Williams encounteredWoullard. Woullard asked her what she was doing; Williams replied thatshe was gathering some of her belongings to take to her mother's housebecause she did not "want to be bothered with the arguing." Woullardquickly stood up, "got in [her] face," pointing directly at her andthreatening to Williams and her mother.
 {¶ 7} Woullard then asked Williams for a ride to Dayton, but shedeclined because of his threats. Woullard became very upset and beganpunching, hitting and kicking her. Williams hit her head on the wall andfell to the ground. Razor, who was across the hall in the kitchen, sawwhat was occurring and began screaming at Woullard. Razor grabbed a knifefrom the kitchen and went toward Woullard. Williams intervened andprevented Razor from entering the room.
 {¶ 8} After Woullard left the room, Williams and Razor quickly leftthe residence. As they ran out of the house, they saw Woullard runningafter them, swinging a silver colored baseball bat. Williams and Razorscreamed for someone to call the police. Woullard returned to theresidence. The Fairborn Police arrived shortly thereafter.
 {¶ 9} Williams suffered a bloody lip and a swollen hand Officer JosephP. May was dispatched to the residence and saw Williams' injuries. Uponsecuring the home, he did not locate Woullard, but did recover a baseballbat from the back yard of the residence.
 {¶ 10} Warren Howard, a Dayton Municipal Court Probation Officer,testified at trial that he had previously been assigned as Woullard'sprobation officer following a misdemeanor domestic violence conviction in1998, in Case Number 98-CRB-927.
 {¶ 11} The jury convicted Woullard on the domestic violence charge.The trial court sentenced Woullard to eleven months of incarceration.Woullard now appeals his conviction and sentence, asserting fourassignments of error.
 FIRST ASSIGNMENT OF ERROR: {¶ 12} "The trial court erred in sentencing appellant for a felonyinstead of a misdemeanor[.]"
 {¶ 13} Woullard challenges the trial court's jury instructions on theprior domestic violence conviction and also the trial court's judgment ofconviction based upon the language contained in the verdict form.
 {¶ 14} Woullard was charged with Domestic Violence, R.C. 2919.25(A),which per paragraph (D) of that section is a first degree misdemeanor.However, that same paragraph further provides that the offense is afelony of the fifth degree if the offender has previously been convictedof domestic violence. The indictment charging Woullard alleged that hehad previously been convicted of domestic violence and that the offensewith which he was charged is a fifth degree felony.
 {¶ 15} When the case was presented to the jury the court gavethe following charge:
 {¶ 16} "Before you can find the Defendant guilty, you must find beyonda reasonable doubt that on or about the 2nd day of December, 2002, inGreene County, Ohio, the Defendant, Christopher Woullard, knowinglycaused, or attempted to cause physical harm to a family or householdmember, and at the time, Christopher Woullard had previously beenconvicted of domestic violence." The trial court further noted thathaving "previously been convicted of domestic violence means having beenfound guilty or pleading guilty to the crime of domestic violence priorto December 2d 2002."
 {¶ 17} R.C. 2945.75(A)(2) states, in pertinent part, that "[w]hen thepresence of one or more additional elements makes an offense one of moreserious degree * * * [a] guilty verdict shall state either the degree ofthe offense of which the offender is found guilty, or that suchadditional element or elements are present. Otherwise, a guilty verdictconstitutes a finding of guilty of the least degree of the offensecharged."
 {¶ 18} The jury returned a verdict of guilty. The verdict form makesno finding or other reference to the prior conviction alleged or to thedegree of offense charged. Instead, it simply states: "We the Jury, beingduly empaneled and sworn, find the Defendant, Christopher Woullard:Guilty of the offense of domestic violence as charged in the indictment."Thereafter, on May 2, 2003, the trial court entered a judgment convictionWoullard of "Domestic Violence, a felony of the fifth degree."
 {¶ 19} Woullard's defense counsel failed to object to the verdict format trial, and thus Woullard has waived all but plain error on appeal.State v. Ballew, 76 Ohio St.3d 244, 251, 1996-Ohio-81, 667 N.E.2d 369.Counsel's failure to object "constitutes a waiver of any claim of errorrelative thereto, unless, but for the error, the outcome of the trialclearly would have been otherwise." Id.
 {¶ 20} Woullard's first contention is that the trial court did notgive complete jury instructions necessary and relevant for the jury tomake its determination of guilt of the felony charged under State v.Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640. In Comen, the OhioSupreme Court stated that "[a]fter arguments are completed, a trial courtmust fully and completely give the jury all instructions which arerelevant and necessary for the jury to weigh the evidence and dischargeits duty as the fact finder." Id. at paragraph 2 of the syllabus. We findthat the above-mentioned instructions are more than adequate to dischargethe trial court of this duty, as they mentioned the element of a previousdomestic violence conviction and also defined "previously beenconvicted."
 {¶ 21} Woullard's other contention within this assignment of error isthat the trial court erred when it convicted him of the offense ofdomestic violence as a felony rather than as a misdemeanor because theverdict form did not comply with R.C. 2945.75(A)(2). In support of thisargument, Woullard asserts that his situation is similar to that in Statev. Burrow (2000), 140 Ohio App.3d 466, 748 N.E.2d 95, wherein theappellate court reversed on the basis of an imperfect verdict form"similar to the one used in this case."
 {¶ 22} In Burrow, the defendant was convicted of carrying a concealedweapon. The indictment contained the felony-enhancement language whichproperly supplied the enhancement element of R.C. 2923.12(D), "a firearmloaded or with ammunition ready at hand" The verdict form, however, didnot incorporate the language of the indictment. Neither did it containthe degree of the offense or the additional element making the offenseone of a more serious degree. Moreover, while the trial court read theindictment to the jury, it did not further instruct the jury on theadditional "in the commission of a felony" element. Based upon this, theappellate court reversed on the basis of the imperfect verdict form,finding plain error.
 {¶ 23} We recently addressed a similar situation in State v. Boykin,Montgomery App. No. 19896, 2004-Ohio-1701. In Boykin, the trial courtprovided the following verdict forms to the jury in the matter where therewas to be a felony enhancement provision: "We, the jury, upon the issuesjoined in this case, do find the Defendant, MATTHEW C. BOYKIN, guilty ofPOSSESSION of CRIMINAL TOOLS for Check Number * * * in violation of R.C.2923.24(A) of the Ohio Revised Code." Id. at ¶ 130.
 {¶ 24} The indictment in Boykin included the additional element, "inthe commission of a felony," but failed to describe the felony. Theverdict form did not incorporate the language of the indictment, and thetrial court did not further instruct the jury on the additional "in thecommission of a felony" element. Despite the lack of felony-enhancementlanguage on the verdict form, the trial court sentenced Boykin as if hewere convicted of a felony. We reversed the trial court's sentencing,finding that the trial court's failure to instruct the jury on the "inthe commission of a felony" element "gave the jury a meaningfulopportunity to find Boykin guilty only of the misdemeanor offense." Wefound that the error was not harmless, and we reversed and remanded thecause for re-sentencing.
 {¶ 25} This case is distinguishable from Burrow and Boykin as thefocus in those cases was the trial court's failure to describe thefelony-enhancement specification to the jury in its charge. In thiscase, the trial court did identify the aggravating circumstance in itscharge, that being the prior domestic violence conviction. The trialcourt further explained that the jury had to find a prior domesticviolence conviction to find Woullard guilty of domestic violence.
 {¶ 26} In both Burrow and Boykin, a substantial compliance rule wasapplied to avoid the failure to strictly comply with provisions governingjury instructions. However, the defect here is not with respect to theinstructions that were given but with respect to the verdict form, whichfailed to contain the specific enhancement finding required by R.C.2945.75(A)(2).
 {¶ 27} The State relies on State v. Woods (1982), 8 Ohio App.3d 56,wherein the Eighth District Court of Appeals held that a verdict'sfailure to comply with R.C. 2945.72(A)(2) does not constitute reversibleerror when "the verdicts incorporate the language of the indictments, theevidence overwhelmingly shows the presence of the aggravatingcircumstances, and defendants never objected at trial to the form of theverdicts." Id., at p. 63.
 {¶ 28} The three Woods requirements are satisfied here. Defendantnever objected to the form of the jury's verdict. There wasuncontradicted evidence of the aggravating circumstance. And, at least tothe extent that it mentioned the "language of the indictments" by way ofthat summary reference, the verdict incorporates that language of theindictment. Nevertheless, we decline to follow Woods because we believethat its logic is flawed in at least two ways.
 {¶ 29} First, Woods cites and relies on State v. Corkran (1965),3 Ohio St.2d 125, which found that a verdict form that did not include anexpress finding of the value of property allegedly stolen wasnevertheless sufficient because the defendant was charged with stealingproperty having a value of less than sixty dollars, the minimum valueamong two or more which the theft statute identified, and "[t]he verydescription in the indictment and in the evidence of the stolenmerchandise . . . demonstrates that it possessed some value." Id., at p.130.
 {¶ 30} Here, unlike in Woods, Defendant-Appellant was convicted of analternative greater degree of the offense charged, not the threshold orminimal level of the statutory offense. The jury was therefore requiredto reach a particular finding in order to return a verdict of guilty withrespect to the greater offense. In Woods, the basic finding was implicitin the verdict the jury returned.
 {¶ 31} Second, a substantial compliance test ignores the furtherlimitation the General Assembly imposed when it enacted the findingrequirement in R.C. 2945.75(A)(2), which states: "Otherwise, a guiltyverdict constitutes a finding of guilty of the least degree of theoffense charged." It is noteworthy that the version of R.C. 2945.75involved in Corkran contained no similar limitation. The General Assemblypresumably added it for some purpose. Engrafting a judicial rule ofsubstantial compliance defeats that purpose and the statutory mechanismthe General Assembly adopted to enforce it.
 {¶ 32} We are also instructed by the General Assembly that "sectionsof the Revised Code defining offenses or penalties shall be strictlyconstrued against the state, and liberally construed in favor of theaccused." R.C. 2901.04(A). This does not prohibit the use of substantialcompliance tests, and the substantial compliance factors set out in Woodimposes the highest of standards. Nevertheless, the R.C. 2901.04(A)enjoinder makes it difficult to put aside the consequence that R.C.2945.75(A)(2) plainly imposes for a failure to comply with its findingsrequirement: that, otherwise, the guilty verdict returned "constitutes afinding of guilty of the least degree of the offense charged." Id.
 {¶ 33} These considerations cause us to conclude that, on the verdictreturned, the trial court erred when it convicted Defendant-Appellant ofthe charged offense of Domestic Violence, R.C. 2919.25(A), as a fifthdegree felony instead of a first degree misdemeanor, which is the leastdegree of that offense per R.C. 2919.25(D). Further, because the error isstructural in nature, it is not waived by Defendant-Appellant's failureto object.
 {¶ 34} The first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR: {¶ 35} "Appellant was denied his right to a fair trial when hereceived ineffective assistance of counsel in violation of the Fifth,Sixth and Fourteenth Amendements [sic] to the united statesconstitution[.]"
 {¶ 36} Preliminarily, we note that in order to demonstrate ineffectiveassistance of counsel, Woullard must establish that his counsel'srepresentation fell below an objective standard of reasonableness andthat he has been prejudiced by his counsel's deficient performance,i.e., that there exists a reasonable probability that, were it not forcounsel's errors, the result of the trial would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.Trial counsel is entitled to a strong presumption that his or her conductfalls within the wide range of reasonable assistance. See Strickland,466 U.S. at 689. Hindsight is not permitted to distort the assessment of whatwas reasonable in light of counsel's perspective at the time, and adebatable decision concerning trial strategy cannot form the basis of afinding of ineffective assistance of counsel. See id.; State v. Parker,Montgomery App. No. 19486, 2003-Ohio-4326, ¶ 13.
 {¶ 37} Woullard asserts that he suffered from ineffective assistanceof counsel because trial counsel failed to request a jury instruction onself-defense, failed to insist on more specific definitions of the words"family or household member," and failed to subpoena Razor and OfficerLawrence Marshall for trial.
 {¶ 38} We first address Woullard's claim that his counsel wasineffective in failing to pursue a theory of self-defense. Initially, wenote that if counsel decides not to pursue every possible trialstrategy, defendant is not necessarily denied effective assistance ofcounsel. State v. Brown (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523.Defense counsel's strategy must have been outside the realm of legitimatetrial strategy so as "to make ordinary counsel scoff" before a convictionwill be reversed on the basis of ineffective assistance. See State v.Yarber (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322; State v.Burgins (1988), 44 Ohio App.3d 158, 160, 542 N.E.2d 707; State v. Moore(Mar 21, 1998), Franklin App. No. 97APA07-896.
 {¶ 39} Under Ohio law, to support an instruction on self-defense, anaccused must prove by a preponderance of the evidence: (1) the accusedwas not at fault in creating the situation giving rise to the affray; (2)the accused had a bona fide belief that he was in imminent danger ofdeath or great bodily harm and that the only means of escape from suchdanger was in the use of force; and (3) the accused must not haveviolated any duty to retreat or to avoid the danger. State v. Williford(1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, citing State v. Robbins(1979), 58 Ohio St.2d 74, paragraph two of the syllabus, 388 N.E.2d 755.Further, "[i]f the defendant fails to prove any one of these elements bya preponderance of the evidence he has failed to demonstrate that heacted in self-defense." State v. Jackson (1986), 22 Ohio St.3d 281, 284,490 N.E.2d 893.
 {¶ 40} In this case, the evidence at trial does not support aself-defense scenario. First, the evidence establishes that Woullard wasat fault in creating the situation giving rise to the affray. Williamstestified that when she went back to her residence to pick up some of herand her children's belongings, Woullard became upset and "got in herface," threatening to kill her and her mother. When Williams declined todrive Woullard to Dayton, Woullard responded by punching, kicking andhitting Williams. Williams' testimony was corroborated by Razor, whostated that Woullard had punched and kicked Williams after arguing withher. No evidence establishes that Williams reacted aggressively toWoullard's actions to make him retaliate. In fact, Williams stated thatshe fell to the ground, but Woullard continued to kick and punch her.Razor corroborated these facts, stating that she had watched her sister,who was on the ground, being kicked and punched by Woullard.
 {¶ 41} Regarding the evidence that Razor grabbed a kitchen knife andwent after Woullard, the record reveals that the above-mentioned factsoccurred prior to Razor obtaining the knife. Therefore, at the pointRazor had grabbed the knife and approached Woullard, the elements ofdomestic violence had already been satisfied.
 {¶ 42} Second, no evidence establishes that Woullard believed that hewas in imminent danger of death or great bodily harm that mandated theuse of such force to escape the danger. Woullard claims that he had touse force to escape Razor, who had grabbed a knife from the kitchen.However, there is no evidence that Woullard saw the knife in Razor'scontrol, since Williams prevented Razor from entering the bedroom.Furthermore, the record reveals that Woullard began beating Williamsprior to Razor obtaining the knife from the kitchen, thus the self-defenseinstruction would have been futile in this domestic violence case.Finally, Woullard had the opportunity to retreat when Williams and Razorran out of the house and off the property. Instead, Woullard followedthem out of the house, armed with a baseball bat.
 {¶ 43} Accordingly, we find that a jury instruction on self-defensewould have been futile since he failed to prove the elements ofself-defense by a preponderance of the evidence. Furthermore, a claim ofineffective assistance of counsel cannot be predicated upon a matterwhich did not constitute error. State v. Getsy (1998), 84 Ohio St.3d 180,702 N.E.2d 866. Based on the evidence presented, we cannot conclude thattrial counsel's performance fell below an objective standard ofreasonableness.
 {¶ 44} Woullard next asserts that he suffered from ineffectiveassistance of counsel because trial counsel failed to request a morespecific jury instruction on the definition of "family or householdmember."
 {¶ 45} It is error for a trial court not to give a jury allinstructions which are relevant and necessary for the jury to weigh theevidence and discharge its duty as the trier of fact. State v. Comen(1990), 50 Ohio St.3d 206, 553 N.E.2d 640. Accordingly, the trial courtmust give a correct jury instruction on the elements of the offensecharged and all defenses raised by the evidence. State v. Williford(1990), 49 Ohio St.3d 247, 551 N.E.2d 1279.
 {¶ 46} Woullard was found guilty of domestic violence in violation ofR.C. 2919.25(A), which provides: "No person shall knowingly cause orattempt to cause physical harm to a family or household member." Thestatute defines "family or household member" as any of the following:
 {¶ 47} "(a) Any of the following who is residing or has resided withthe offender:
 {¶ 48} "(i) A spouse, a person living as a spouse, or a formerspouse of the offender;
 {¶ 49} "(ii) A parent or a child of the offender, or another personrelated by consanguinity or affinity to the offender;
 {¶ 50} "(iii) A parent or a child of a spouse, person living as aspouse, or former spouse of the offender, or another person related byconsanguinity or affinity to a spouse, person living as a spouse, orformer spouse of the offender.
 {¶ 51} "(b) The natural parent of any child of whom the offender isthe other natural parent or is the putative other natural parent."
 {¶ 52} R.C. 2919.25(F)(2).
 {¶ 53} The statute further defines "person living as a spouse" to be"a person who is living or has lived with the offender in a common lawmarital relationship, who otherwise is cohabiting with the offender, orwho otherwise has cohabited with the offender within five years prior tothe date of the alleged commission of the act in question." R.C.2919.25(F)(2).
 {¶ 54} The trial court instructed the jury as follows: "The Defendantin this case is charged with domestic violence. Before you can find theDefendant guilty, you must find beyond a reasonable doubt that on orabout the 2nd day of December, 2002, in Greene County, Ohio, theDefendant, Christopher Woullard, knowingly caused, or attempted to causephysical harm to a family or household member, and at the time,Christopher Woullard had previously been convicted of domesticviolence."
 {¶ 55} In defining "family or household member," the trial courtinstructed the jury as follows:
 {¶ 56} "Family or household member means a person who is [sic] resideswith the Defendant, and who is a person living as a spouse of theDefendant.
 {¶ 57} "A person living as a spouse means a person who is living withthe Defendant, has lived with the Defendant in a common law maritalrelationship, cohabitating with the Defendant, or has cohabitated withthe Defendant within five years before the commission of the act inquestion."
 {¶ 58} The general instruction on domestic violence given by the trialcourt is virtually identical to the language of the statute defining thatoffense, R.C. 2919.25(A) and 2919.25(F)(1) and (2). Likewise, the trialcourt's instructions in this case defining various terms and specificelements of the offense of domestic violence recite the statutorydefinitions.
 {¶ 59} We do note that in instructing the jury on the definition of"family or household member," the trial court failed to include in itsinstruction language defining all the different scenarios as contained inR.C. 2919.25(F)(1)(a)(ii) and (iii), and R.C. 2919.25(F)(1)(b). We find,however, that these alternative scenarios did not apply to this case.Hence, we reject that any claim that this defect in the trial court'sinstructions may have misled the jury or affected the outcome ofWoullard's trial, given the state of the evidence in this case.
 {¶ 60} Woullard presented no evidence at trial. The only evidenceabout the events that transpired that led to this domestic violence camefrom the testimony of the victim, Williams, and her sister, Razor.
 {¶ 61} Williams testified that Woullard, her children and she livedtogether for approximately eight years. During that time, Woullard andshe shared a bed and the household bills, and Woullard maintained arelationship with her children. Additionally, Razor referred to thebedroom at the residence as "Him and Chandra's room."
 {¶ 62} On this record, there is no reasonable possibility that theoutcome of this trial could have been affected by the trial court'sfailure to include language in its domestic violence instruction morespecifically defining "family and household member." Incidentally,Woullard does not provide us with suggestions on how the trial courtcould have "better-defined" the term "family or household member." Hadsuch an instruction been given, the outcome of this trial would haveundoubtedly been the same.
 {¶ 63} As such, we must overrule this portion of Woullard's assignmentof error, as had trial counsel objected to the jury instructions, theoutcome of trial would not have been different.
 {¶ 64} Last, Woullard claims ineffective assistance of counsel basedupon trial counsel's failure to subpoena Razor and Officer LawrenceMarshall, and trial counsel's failure to request that the trial court notrelease the witnesses until after they testified for the prosecution.
 {¶ 65} An attorney's failures to subpoena witnesses is within therealm of trial tactics and does not, absent a showing of prejudice, denya defendant effective assistance of counsel. State v. Hunt (1984),20 Ohio App.3d 310, 486 N.E.2d 108, syllabus. Woullard must overcome thestrong presumption that, under the circumstances, counsel renderedadequate assistance and that the challenged actions might be consideredsound trial strategies. State v. Smith (1985), 17 Ohio St.3d 98, 100,477 N.E.2d 1128.
 {¶ 66} In this case, Woullard claims that he suffered from ineffectiveassistance of counsel because trial counsel failed to subpoena Razor andOfficer Marshall at trial. He claims that he was unable to question Razorabout her prior conviction and pose other obstacles that would preventthe jury from finding her testimony credible. Similarly, defense counselsought examination of Officer Marshall to impeach his testimony. OfficerMarshall testified that he had had no prior contact with Williams beforethe domestic violence incident. Woullard claims, however, that OfficerMarshall had been dispatched to a traffic accident scene that involvedWilliams in August of 2002.
 {¶ 67} We do not find that this amounts to ineffective assistance ofcounsel. Woullard's trial counsel had the opportunity, and exercised theopportunity, to cross-examine both witnesses during trial. Inasmuch astrial counsel had the opportunity and used that opportunity tocross-examine Razor and Officer Marshall, it is unclear how subpoenaingthem to call them as witnesses again would have changed the outcome attrial. In fact, defense counsel cross-examined Razor, and alsore-cross-examined her. As the trial court pointed out, at no time didtrial counsel address the issue of a prior conviction, although defensecounsel had ample opportunity to do so. Similarly, the issue of OfficerMarshall having prior contact with Williams did not arise, althoughdefense counsel could have pursued this line of questioning duringcross-examination.
 {¶ 68} Regarding whether the failure of trial counsel to subpoenathese witnesses resulted in ineffective assistance of counsel, we cannotsay that but for trial counsel's failure, the results of Woullard's trialwould have been different, as he had the opportunity to cross-examinethese witnesses about such information.
 {¶ 69} Accordingly, we find that this portion of Woullard's assignmentof error has no merit.
 {¶ 70} Based upon our previous discussion, we overrule Woullard'ssecond assignment of error.
 THIRD ASSIGNMENT OF ERROR: {¶ 71} "Appellant's conviction for domestic violence is basedupon insufficient evidence[.]"
 {¶ 72} Woullard asserts that there was insufficient evidence in therecord for the State to have met its burden of proof on the element of"family or household member" within the charge for domestic violence.Specifically, Woullard bases this on Williams' contact with the FairbornPolice Department after his arrest to report that she and Woullard didnot reside in the same household.
 {¶ 73} When reviewing a trial court's decision on a sufficiency of theevidence standard, an appellate court should examine the evidence todetermine whether, when believed, such evidence "would convince theaverage mind of the defendant's guilt beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. When the evidence isinterpreted most favorably toward the prosecution, sufficient evidencewas presented if a rational trier of fact "could have found the essentialelements of the crime proven beyond a reasonable doubt." Id.
 {¶ 74} Domestic violence is prohibited under R.C. 2919.25(A), whichprovides, "[n]o person shall knowingly cause or attempt to cause physicalharm to a family or household member." Because the General Assemblybelieved that an assault involving a family or household member deservedfurther protection than an assault on a stranger, "the offense ofdomestic violence, as expressed in R.C. 2919.25(E)(1)(a) and relatedstatutes, arises out of the relationship of the parties rather than theirexact living circumstances." State v. Williams, 79 Ohio St.3d 459,463-464, 1997-Ohio-79, 683 N.E.2d 1126. Cohabitation is the centralelement of the R.C. 2919.25(E)(2) definition of a person living as one'sspouse. The supreme court has held that the essential elements ofcohabitation are the sharing of familial or financial responsibilitiesand consortium. Williams, supra, at paragraph two of the syllabus.
 {¶ 75} Possible factors establishing shared familial or financialresponsibilities include provisions for shelter, food, clothing,utilities, and commingled assets. Id. at 465. These factors are unique toeach case, and how much weight, if any, to give to each of these factorsmust be decided on a case-by-case basis by the trier of fact. Id. Theburden of establishing cohabitation is not substantial. State v. Young(Nov. 20, 1998), Montgomery App. No. 16985. In determining issues such aswhether two persons had cohabited for purposes of R.C. 2919.25(E)(2),"courts should be guided by common sense and ordinary human experience."Id.
 {¶ 76} According to Williams, Woullard and her children lived with herat 1412 Salem in Fairborn, Ohio. Williams stated that Woullard and shehad been involved in a relationship "off and on" for eight years. Shefurther testified that Woullard and she had shared a bedroom at theresidence, they had shared the monthly expenses of the residence, andWoullard had engaged in a relationship with her children.
 {¶ 77} During cross-examination, defense counsel attempted to elicittestimony from Williams that she did not live with Woullard. Williamsexplained that, after his arrest on the charge at issue, she hadcontacted the Fairborn Police Department to inform them that Woullard didnot reside at the residence at 1412 Salem with her. Despite this,however, she testified during trial that Woullard had resided with herduring the time of the incident. Williams explained that she did call theFairborn Police Department with this information because she wasconcerned that she would lose her benefits with the Greene MetropolitanHousing Authority because Woullard had resided in the house.
 {¶ 78} Additionally, Razor corroborated Williams' testimony bystating that on the date of the incident, she witnessed Woullardin "[h]im and Chandra's room."
 {¶ 79} Guided by common sense and ordinary human experience, theaverage person could have concluded from this evidence that Williams andWoullard had shared their familial and financial responsibilities, andthat Woullard was a person living as Williams' spouse for purposes of adomestic violence conviction. See State v. Miller (1995),105 Ohio App.3d 697, 664 N.E.2d 1309.
 {¶ 80} Accordingly, after viewing the evidence in a light mostfavorable to the prosecution, any trier of fact could have found theessential elements of the domestic violence proven beyond a reasonabledoubt. Consequently, this assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR: {¶ 81} "Appellant's conviction for domestic violence is against themanifest weight of the evidence[.]"
 {¶ 82} In this last assignment of error, Woullard asserts that hisconviction for domestic violence is against the manifest weight of theevidence because Williams was not a credible witness. Because of this,the jury lost its way on the issue of whether Woullard was a "family orhousehold member."
 {¶ 83} When conducting the manifest weight analysis, "[t]he court,reviewing the entire record, weighs the evidence and all reasonableinferences, considers the credibility of the witnesses and determineswhether in resolving conflicts in the evidence, the [trier of fact]clearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." State v. Hufnagel (Sept. 6, 1996), Montgomery App. No.15563, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, paragraphthree of the syllabus, 485 N.E.2d 717. Unlike the sufficiency of evidencestandard of review, a reviewing court does not construe the evidence moststrongly in favor of the prosecution when using a manifest weightstandard of review. Hufnagel, supra. A manifest weight of the evidenceargument questions the believability of the evidence and asks a reviewingcourt to determine which of the competing inferences is more believable.Id. However, the appellate court may not substitute its judgment for thatof the trier of fact on the issue of the credibility of the witnessesunless its is patently apparent that the factfinder lost its way. Statev. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 84} Woullard claims that the State failed to establish thathe was a "family or household member," based upon the incredibletestimony of Williams. We disagree.
 {¶ 85} As we stated in the previous assignment of error, Williams didpresent conflicting testimony as to whether she lived with Woullard.Williams explained that the reason she had called the Fairborn PoliceDepartment was because she was not permitted to be living with Woullardin this type of housing, and she was afraid that she would lose herbenefits. The jury heard all of the testimony at issue, including theconflicting testimony of Williams, and made a determination thatWilliams' testimony that Woullard and she had resided together wascredible. The jury in this case had to base its judgment on thecredibility of the witnesses. We cannot say that the trier of fact lostits way and performed a miscarriage of justice in determining thatWoullard did reside with Williams at 1412 Salem. Hence, we defer to thejury's assessment of the credibility of the witnesses and overrule thisassignment of error.
 {¶ 86} Woullard's fourth assignment of error is overruled.
 {¶ 87} Having sustained the first assignment of error, we will reverseWoullard's conviction and remand the case to the trial curt to enter ajudgment convicting Woullard of Domestic Violence as a misdemeanor of thefirst degree, and to impose a sentence pursuant to law. Otherwise, thejudgment of the trial court is affirmed.
 Fain, P.J. and Young, J., concur.