[Cite as *State v. Strutz*, 2011-Ohio-3660.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-100334 |
| | | C-100335 |
| Plaintiff-Appellee, | : | TRIAL NOS.   B-0905646 |
| | | B-0906057 |
| vs. | : | |
| | | *D E C I S I O N.* |
| JOHN P. STRUTZ, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  July 27, 2011

*Joseph T. Deters*, Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela Stagnaro*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Judge.**

{¶1} Two indictments were issued against defendant-appellant, John P. Strutz, for the murder and dismemberment of his wife, Kristen Strutz. Following a bench trial on the charges contained in the indictments, Strutz was convicted of two counts of tampering with evidence,[1] murder,[2] and abuse of a corpse.[3] The trial court imposed the following prison terms: five years for each count of tampering with evidence, 15 years to life for murder, and one year for abuse of a corpse. The prison terms were ordered to be served consecutively for a total aggregate prison term of 26 years to life. Bringing forth four assignments of error, Strutz now appeals his convictions and sentence. We affirm.

### I. Character Evidence

{¶2} In his first assignment of error, Strutz contends that the trial court erred by admitting "irrelevant and prejudicial character evidence" throughout the trial. Specifically, Strutz maintains that the state improperly presented the testimony of three women, Alisha Straub, Danielle Baker, and Nicole Luca, in its case-in-chief for the sole purpose of attacking Strutz's character and portraying him as an adulterer.

{¶3} At trial, Straub testified that Strutz had frequently visited her, from December 2008 through March 2009, at the Save-A-Lot store where she worked. He was "flirtatious" and told her that he did not have a wife or children. Straub cut off contact with Strutz after Strutz's wife, Kristen, contacted her and told her that Strutz was married.

---

[1] R.C. 2921.12(A)(1).
[2] R.C. 2903.02(A).
[3] R.C. 2927.01(B).

{¶4}  Baker testified that Strutz had visited the United Dairy Farmers store where she worked every day, and they became friends.  Strutz told her that he and his wife were in counseling but were going to divorce because his wife was not participating in the counseling sessions.  He implied that he was no longer living with his wife; therefore, Baker introduced Strutz to her friend Nicole Luca.

{¶5}  Luca testified that she, Baker, and Strutz had all met at a local bar one night.  Luca and Strutz kissed.  The two of them met again at the "skirt game" in Delhi Township, but she broke off contact with him after that because she had the impression that he was not yet divorced.

{¶6}  The day before Kristen Strutz disappeared, Baker testified that Strutz had told her that his divorce would be final soon.

{¶7}  Because Strutz did not object to this testimony at trial, we review it for plain error.[4]  Notice of plain error is to be taken with the utmost caution, and plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been otherwise.[5]

{¶8}  First, we cannot say that the testimony of these women was irrelevant, or that the trial court erred by allowing it into evidence.  The evidence established a motive for the murder because it tended to show that Strutz had killed Kristen because they were having marital difficulties.[6]  Regardless, even if we deemed the admission of the testimony to be erroneous, we hold that Strutz has failed to demonstrate that, but for that testimony, he would not have been convicted of the charged offenses.  There was overwhelming circumstantial evidence presented to demonstrate that Strutz had

---

[4] See Crim.R. 52(B).
[5] *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
[6] See *State v. Wilson*, 74 Ohio St.3d 381, 1996-Ohio-103, 659 N.E.2d 292 (evidence that defendant attempted to persuade another woman to go out with him was relevant with respect to proving motive behind defendant's murder of a third person).

3

murdered Kristen and dismembered her body. Several of the garbage bags that he had bought on the day she disappeared were used to store her remains in Strutz's garbage can. Additionally, a forensic anthropologist testified that an area on the side of Strutz's house where police had found fat globules and human bone fragments with saw-tooth marks on them was either a dismemberment or a cleanup site.

{¶9} Accordingly, the first assignment of error is overruled.

## II. Prior Consistent Statements

{¶10} In his second assignment of error, Strutz contends that the trial court erred as a matter of law by not permitting Strutz "to introduce his prior consistent statements or [to] rebut an express or implied charge of recent fabrication or improper influence or motive." We are unpersuaded.

{¶11} Strutz testified in his own defense. During his direct examination, Strutz admitted that he had reviewed the transcripts of his recorded conversations with Detective Macaluso and that the transcripts were "pretty accurate." He then moved to admit the recordings of those conversations into evidence to rebut testimony from police officers that Strutz had acted disinterested in the fact that his wife was missing. Strutz argued that his prior statements were not hearsay because they were not being offered to prove the truth of the matter asserted but to show his state of mind: that he was concerned about his missing wife. The state argued that Strutz's statements were hearsay and that he was only trying to admit them as a way to bolster his trial testimony. We agree with the state.

{¶12} Evid.R. 801(D)(1)(b) provides that a statement is not hearsay if "the declarant testifies at a trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence and

motive[.]" Ohio courts have interpreted this rule to apply only to those prior consistent statements that have preceded prior inconsistent statements or that have been made before any motive to falsify testimony has arisen.[7] Normally, Evid.R. 801(D)(1)(b) is used by the state to rebut the charge of "recent fabrication" raised by defense counsel during the cross-examination of a state's witness. If there has been sufficient impeachment of a witness to amount to a charge of recent fabrication at trial, then the state may be allowed to introduce prior out-of-court consistent statements that would otherwise be considered hearsay. In determining whether to admit a prior consistent statement, a trial court should take a "generous view" of the "the entire trial setting to determine if there was sufficient impeachment to amount to a charge of fabrication or improper influence or motivation."[8]

{¶13} After reviewing the record, we hold that the trial court properly held that the recorded conversations between Strutz and Detective Macaluso were inadmissible under Evid.R. 801(D)(1)(b). First, Strutz had not yet been cross-examined regarding his statement to Detective Macaluso or the other officers. At that point, offering the recorded conversations into evidence could only be construed as an attempt to bolster Strutz's credibility, which made the recorded conversations hearsay because they were being offered for the truth of the matter asserted.[9] Second, if Strutz wanted to offer these recordings to show his state of mind—that he had been concerned about the disappearance of his wife—he could have simply testified to that fact. Finally, we are not convinced that the other officers' testimony that Strutz seemed disinterested in the disappearance of his wife amounted to a charge of recent fabrication. Strutz had not changed his story from the time his wife had disappeared to the end of his trial.

---

[7] *State v. Burrell*, 1st Dist. No. C-030803, 2005-Ohio-34, ¶17.
[8] *State v. Grays*, 12th Dist. No. CA2001-02-007, 2001-Ohio-8679.
[9] See *State v. Yarber* (1995), 102 Ohio App.3d 185, 656 N.E.2d 1322.

{¶14} Because the taped statements were hearsay and merely bolstered Strutz's testimony, we hold that the trial court did not err by refusing to admit them into evidence under Evid.R. 801(D)(1)(b). The second assignment of error is overruled.

### III. Sufficiency and Manifest Weight

{¶15} In his third assignment of error, Strutz contests the sufficiency and weight of the evidence underlying his convictions for murder, abuse of a corpse, and both counts of tampering with evidence. This assignment is not well taken.

{¶16} When reviewing the sufficiency of the evidence, this court must view all probative evidence and reasonable inferences in the light most favorable to the prosecution to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.[10] In contrast, when reviewing the weight of the evidence, this court must independently weigh the evidence and consider the credibility of the witnesses to determine whether the trier of fact lost its way and created a manifest miscarriage of justice in finding the defendant guilty.[11]

{¶17} With respect to his convictions for murder and abuse of a corpse, Strutz argues that the state did not prove that he was the person who had murdered his wife and dismembered her. We disagree. The record contains overwhelming circumstantial evidence that Strutz murdered and dismembered his wife. First, the torso of Kristen's body was found in one of Strutz's garbage cans within a black garbage bag that he had purchased the day Kristen disappeared. Second, although early in the morning on the day that she had disappeared, Kristen had allegedly sent Strutz a text message that said she was going to the store, her purse was found in Strutz's car and her cellular phone was left at home. Her car was also left in the driveway with the door open and the key in

---

[10] *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[11] *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

the ignition. Finally, Kristen's crutches, which she needed to move around because she recently had had foot surgery, were left in the house. Despite noticing all of these things, Strutz failed to call the police and report his wife missing until after 4:30 p.m. Instead, he took his children out to a park, to get ice cream, and to a Dollar Store, where he bought several bottles of Clorox and a mop. He also stopped at a Kroger store to buy garbage bags. Moreover, on the side of Strutz's house, there was fat and human bone that, according to forensic anthropologist Elizabeth Murray, was part of a dismemberment or a cleanup site. The bone found at this site had teeth marks from a saw on it. Dr. Symmes, an expert forensic anthropologist, opined that he could not rule out the hacksaw found in Strutz's garbage can as being the saw that had been used to cut the bone found on the side of the house.

{¶18} Next, Strutz argues that the state did not prove that he had purposely killed Kristen. But evidence of concealment of Kristen's body parts and her dismemberment demonstrated that Strutz had attempted to cover up the murder, thereby evincing a consciousness of guilt.[12]

{¶19} Based on the totality of the circumstances, we hold that there was sufficient evidence to prove that Strutz had purposefully murdered Kristen and dismembered her body. Further, we cannot say that the trial court created a manifest miscarriage of justice by finding Strutz guilty of murder and abuse of a corpse.

{¶20} With respect to the tampering-with-evidence charges, we note that one charge dealt with concealing Kristen's body and the other involved concealing the saws that may have been used to dismember Kristen's body.

---

[12] *State v. Lawson* (Apr. 30, 2001), 12th Dist. No. CA99-12-226 (evidence that defendant cut up body with a power saw showed purpose).

{¶21} R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶22} Strutz argues that his convictions for tampering with evidence cannot stand because the state did not show that he had known that an "official proceeding or investigation" for murder was in progress. But when Strutz murdered Kristen, he knew that an official investigation was likely to be instituted. Thus, Strutz's act of concealing parts of Kristen's body in his garbage can, as well as moving saws from the yard into his garbage can, after he had murdered Kristen was sufficient to show that he had constructive knowledge that an official investigation was likely to be instituted, and as a result there was sufficient evidence to demonstrate that Strutz had tampered with the evidence.[13] Additionally, based on the foregoing, we cannot say that the trial court created a manifest miscarriage of justice by finding Strutz guilty of both counts of tampering with the evidence.

{¶23} The third assignment of error is overruled.

### IV. Consecutive Sentences

{¶24} In his final assignment of error, Strutz maintains that the trial court erred by imposing consecutive sentences without making the statutorily required findings under R.C. 2929.14(E)(4), in light of the United States Supreme Court's decision in *Oregon v. Ice*.[14] But the Ohio Supreme Court has recently rejected Strutz's argument in *State v. Hodge*.[15] *Hodge* addressed the effect of *Oregon v. Ice* on

---

[13] See *State v. Barnes*, 6th Dist. No. WD-07-024, 2008-Ohio-1854, ¶14-15 (act of tearing up check after committing the criminal act of presenting it to a store clerk was sufficient to show that defendant had constructive knowledge that an official investigation was likely to be instituted).
[14] (2009), 555 U.S. 160, 129 S.Ct. 711.
[15] 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraph two of the syllabus.

Ohio's sentencing laws and held that "[t]he United States Supreme Court's decision * * * does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*."[16] Thus, Strutz's argument is without merit after *Hodge*.

{¶25} Therefore, the fourth assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J.,** and **FISCHER, J.,** concur.

Please Note:
  The court has recorded its own entry this date.

---

[16] Id.