[Cite as *State v. Tumey*, 2019-Ohio-219.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA1060 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| CHARLES TUMEY, | : | |
| Defendant-Appellant. | : | RELEASED 01/17/2019 |

APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for appellant.

C. David Kelley, Adams County Prosecuting Attorney, and Kris D. Blanton, Adams County
Assistant Prosecuting Attorney, West Union, Ohio, for appellee.

Hoover, J.

{¶1}   An Adams County jury found Charles Tumey ("Tumey") guilty of four counts of

felonious assault stemming from him beating his girlfriend, Donna Baker, ("Baker") over a

period of several days. The trial court convicted Tumey upon the jury verdict and sentenced him

to prison.

{¶2}   On appeal, Tumey first asserts that his convictions for felonious assault are

against the manifest weight and sufficiency of the evidence. Tumey does not claim that Baker

was not the victim of felonious assault; instead he argues that he was not the perpetrator because:

(1) Baker had the DNA of an unknown male under her fingernails; and she failed to identify who

that person could be; (2) Baker had a motive to falsely accuse Tumey of the crimes—he

repeatedly cheated on her and sold and disposed of her property and money; (3) Tumey had no

visible injuries to his hands, indicating that he did not commit the crimes; and (4) Baker suffered

a traumatic brain injury as a result of the beatings she endured, resulting in her having difficulty in remembering details about them and giving inconsistent accounts.

{¶3}    However, the jury was free to credit the state's evidence, which included Baker's consistent and credible testimony at trial that Tumey inflicted the beatings on her that resulted in serious physical harm to her. Baker further testified that although she still loved Tumey, she wanted to tell the truth about what he did to her and did so through her trial testimony. The state also introduced evidence that Baker's blood was underneath Tumey's fingernails on both of his hands. In addition, Tumey did not introduce evidence that supported his alibi that he was away from the camper during the entire period that the crimes against Baker occurred. After reviewing the record, we are not persuaded that his convictions are against the manifest weight and sufficiency of the evidence.

{¶4}    Tumey next contends that the trial court erred in failing to merge his convictions for felonious assault because the evidence presented at trial was insufficient to establish any discernible time period or other distinction to support a finding of guilt and separate sentences for four separate assaults. Tumey's contention is meritless because a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offenses. Here the evidence supports Tumey's four separate convictions for felonious assault because Baker sustained at least four separate and identifiable harms from his beatings of her: (1) a broken nose; (2) damage to one of her ears; (3) broken ribs on her left side; and (4) a broken rib on her right side.

{¶5}    Tumey also claims that his trial counsel provided ineffective assistance by failing to call necessary and available witnesses, including exculpatory medical witnesses. Tumey

cannot establish deficient counsel performance because the decision to call witnesses constitutes trial strategy and will not be second-guessed by a reviewing court. Moreover, there is no evidence in the record that expert and other witnesses were available, what their testimony would be, and whether it would be merely cumulative of evidence already elicited. Tumey has not established a reasonable probability that, but for his trial counsel's failure to call witnesses, the result of his jury trial would have been different. Therefore, we reject his ineffective assistance of counsel claim.

{¶6}    Tumey further argues that his case should have been dismissed because he was not brought to trial within the time mandated by the speedy-trial statute. However, Tumey waived our consideration of this issue because he did not file a timely motion to dismiss in the trial court raising this issue.

{¶7}    Tumey finally asserts that cumulative errors deprived him of a fair trial and require reversal of his convictions. However, because we have found no error, much less multiple errors, we refuse to apply the cumulative-error doctrine.

{¶8}    Therefore, we reject Tumey's claims and affirm his convictions and sentence.

## I. Facts and Procedural Background

{¶9}    In October 2016, the Adams County Grand Jury returned an indictment charging Tumey with two counts of kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree, and four counts of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. Tumey entered a not-guilty plea to the charges, and the case proceeded to a four-day jury trial. Tumey filed a notice of alibi that during the period of the crimes charged in the indictment, i.e., October 9-12, 2016, he was in "Section A of Mineral Spring's Campground and

during said time period at various points' left said Section A to go to the bank in Sardinia, Ohio and/or to obtain groceries or eat meals." (Sic.)

{¶10}  At trial, the state's primary witness was the victim, Baker. Baker testified that in October 2016, she lived in a camper with her boyfriend, Tumey, on a lot in the Mineral Springs Lake Resort campground in Adams County, Ohio. According to Baker, in the time period from the October 9 through 12, 2016, Tumey repeatedly hit her, usually with his open hand, causing her to incur several severe injuries. More specifically, she testified that Tumey fractured her nose by repeatedly hitting her. Tumey also smacked her ear repeatedly with his open hand, ultimately causing it to "explode" after being swollen, throwing blood and tiny hunks of tissue over the top of the camper and on the covers of their bed. Even at the trial more than a year later, she still had pain in her ear. Tumey also hit her repeatedly on her left and right sides with his open hand, fracturing at least one rib on both sides, making it painful for her to move. Baker also testified that during this period, they went someplace about every day, including to a gas station, to someone else's house, and to Sardinia, where Tumey went inside a bank, with her staying mostly in the car at Tumey's direction. During each of the three nights during this period, after Tumey finished hitting her, he gave her Seroquel to sedate her and make her fall asleep while he left the camper for a few hours. He also gave her heroin a couple times to help ease her pain caused by his beatings. Baker claimed that she did not attempt to leave during this four-day period because she was drugged and also hoped things would get better. On the early morning of October 12, 2016, Tumey hit her and had her take Seroquel, and the next thing she knew, she woke up later that day in a hospital in Cincinnati. Later, when Tumey was in jail awaiting trial on the pending charges, she and he corresponded with each other because she still loved him despite Tumey assaulting her and inflicting the severe injuries she incurred.

{¶11}   On cross-examination, Tumey's trial counsel engaged in lengthy and vigorous questioning of Baker. Baker admitted that in one of Tumey's letters to her, he expressed concern about why she was continuing to lie. She also said she would not be surprised that when she awoke in the Cincinnati hospital following the assaults that she told a nurse that she did not remember what happened to her. She also responded that it would not be surprising that when she was interviewed a couple days later by a police sergeant that she told him that October 11 and 12 were "big blanks" and she really did not remember what happened. She did not remember the interview with the police sergeant starting with him saying, "I'm here to talk about Charles Ruben Tumey assaulting you," and her replying, "That's what they told me." Baker testified that she suffered minor brain damage as a result of Tumey's assaults on her during that time period, which affected her memory, but did not affect her memory about Tumey hitting her repeatedly between October 9 through 12, 2016.

{¶12}   Baker further testified on cross-examination that she would get mad at Tumey during their six-year relationship because he would disappear for days at a time, usually to see other women. He also urged her to sell her trailer and some real property, and the proceeds were used to buy the camper, a truck, and a car, with Tumey titling the truck in his name even though he did not pay for it. Baker was infuriated when she saw one of Tumey's other girlfriends driving the truck she had bought him. Right before the period in which Tumey's assaults occurred, she got upset at him, packed his stuff up, and told him to get out. She also stated that she was not around any other men during the period that Tumey assaulted her and that she had no doubt that Tumey caused her injuries.

{¶13}   On the morning of October 12, 2016, Tumey called 911 to report that Baker had been severely injured. He advised paramedics and officers who arrived in response to his call

that he "did not do this" and that Baker had "been running with" other men. Paramedics observed multiple bruises on Baker's face and body, some bleeding and dried blood, and further noted that Baker was unconscious and had difficulty breathing. Officers arrested Tumey at the scene and took photographs of his hands, which had blood under the fingertips. A forensic scientist with the Bureau of Criminal Investigation ("BCI") testified that she performed DNA testing on swabs of blood from Tumey's fingernails and concluded that the blood from the fingernails on his right hand contained a major profile consistent with Baker's DNA and a minor profile consistent with Tumey's DNA. She also concluded that the blood on the fingernails of his left hand contained a major profile consistent with Tumey's DNA and a minor profile consistent with Baker's DNA. Tumey's attorney argued that Tumey had Baker's DNA on him because of instructions from the 911 operator that he assist and move Baker.

{¶14} After being taken from her camper while she was still unconscious, Baker was transported to the emergency room of the University of Cincinnati Hospital. Dr. Roderick Fontenette testified that he treated Baker in the emergency room and diagnosed her as suffering from many injuries, including: (1) a broken nose; (2) two broken ribs on her left side; (3) one broken rib on her right side; (4) marked swelling to her left ear, consistent with what was referred to as "cauliflower ear," i.e., disfigurement of the ear caused by blunt trauma; and (5) severe traumatic brain injury caused by blunt-force trauma.

{¶15} One of the BCI forensic scientists also testified that upon testing Baker's fingernail scrapings, the major DNA profile was consistent with her DNA, and additional testing of male DNA it was mixed with revealed a major profile from an unknown male and a minor profile consistent with Tumey's. Tumey told officers that the unknown male DNA might be from a couple men Baker knew or her son, but DNA testing of those individuals revealed that the

unknown male DNA on Baker's fingernails did not match any of them. Baker testified that she did not know who that DNA came from, but she knew that Tumey was the person who repeatedly assaulted her and caused her injuries in the period between October 9 through 12, 2016.

{¶16} Tumey elected not to testify and he presented only one witness, a bank branch manager in Sardinia, who testified that based on bank records, on October 11, 2016, Tumey appeared at the branch and withdrew money from a checking account.

{¶17} The jury returned verdicts finding Tumey guilty of all four counts of felonious assault and not guilty of the two kidnapping counts. The trial court convicted Tumey of the four felonious-assault counts based on the jury verdicts, and proceeded to sentencing, where Tumey's counsel argued that the felonious-assault charges should merge because they were allied offenses of similar conduct. The trial court denied the request to merge the counts and sentenced Tumey to six years for each count, to be run consecutively to each other, and to a one-year sentence for his violation of post-release control, which he was on during the commission of the crimes, for an aggregate 25-year prison term. This appeal followed.

## II. Assignments of Error

{¶18} Tumey assigns the following errors for our review:

I. APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. THE TRIAL COURT IMPROPERLY FAILED TO MERGE THE FOUR FELONIOUS ASSAULT COUNTS FOR THE PURPOSE OF SENTENCING.

III. APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CALL NECESSARY AND AVAILABLE WITNESSES ALONG WITH EXCULPATORY MEDICAL WITNESSES.

IV. APPELLANT WAS NOT BROUGHT TO TRIAL IN THE TIME
MANDATED BY OHIO'S SPEEDY TRIAL STATUTE.

V. CUMULATIVE ERRORS COMMITTED PRIOR TO AND DURING
APPELLANT'S TRIAL DEPRIVED HIM OF A FAIR TRIAL AND REQUIRE
A REVERSAL OF HIS CONVICTIONS.

### III. Law and Analysis

**A.  Tumey's Convictions for Felonious Assault are Not Against the Manifest Weight of the**

**Evidence and are Supported by Sufficient Evidence**

**1.  Standard of Review**

{¶19}  In his first assignment of error, Tumey asserts that his felonious-assault

convictions are not supported by sufficient evidence and are against the manifest weight of the

evidence. "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether,

after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State*

*v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61

Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A sufficiency assignment of error challenges

the legal adequacy of the state's prima facie case, not its rational persuasiveness. *State v. Koon*,

4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17. "That limited review does not intrude on

the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, —— U.S. ——, 136

S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319, 443 U.S. 307, 99 S.Ct. 2781, 61

L.Ed.2d 560.

{¶20}  By contrast, in determining whether a criminal conviction is against the manifest

weight of the evidence, we must review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. To satisfy its burden of proof, the state must present enough substantial credible evidence to allow the trier of fact to conclude that the state has proven all the essential elements of the offense beyond a reasonable doubt. *See State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.) citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, (superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997)).

{¶21} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Thompkins* at 387, 678 N.E.2d 541. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*; *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

{¶22}  Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.).

### 2.  Analysis

{¶23}  The jury found Tumey guilty of four counts of felonious assault in violation of R.C. 2903.11(A)(1), which provides in pertinent part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." "Serious physical harm" includes harm that produces "temporary, substantial incapacity," "temporary, serious disfigurement," or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c), (d), and (e).

{¶24}  Tumey does not claim that Donna Baker was not the victim of felonious assault as defined in R.C. 2901.11(A)(1). Instead, he argues that the state did not establish that he was the perpetrator of the crimes because: (1) Baker had the DNA of an unknown male under her fingernails, and she failed to identify who that person could be; (2) Baker had a motive to falsely accuse Tumey of the crimes—he repeatedly cheated on her and sold and disposed of her property and money; (3) Tumey had no visible injuries to his hands, indicating that he did not commit the crimes; and (4) Baker suffered a traumatic brain injury as a result of the beatings she endured, resulting in her having difficulty in remembering details about them and giving inconsistent accounts.

{¶25}  We reject Tumey's assertion because the jury was free to credit the state's evidence, which included Baker's consistent and credible testimony at trial that Tumey repeatedly beat her in the four-day period from October 9-12, 2016, and that these beatings resulted in serious physical harm to her, i.e., a broken nose, two broken left ribs, one broken right rib, and swelling and pain in her left ear. The state also introduced evidence that Baker's DNA was found underneath Tumey's fingernails on both his hands and that Tumey's DNA, albeit in a smaller quantity than an unknown male's DNA, was found on Baker's fingernails. And Tumey did not introduce evidence that he was away from the camper during the entire pertinent period of the assaults on Baker; in fact, even his notice of alibi stated that he was in a section of the campgrounds during much of that time.

{¶26}  The jury, as the trier of fact, was free to conclude that the unknown male's DNA on Baker's fingernails was irrelevant, that although Baker had a motive to falsely accuse Tumey of the crimes, she was telling the truth and she loved him, that Tumey did not need to have visible injuries to his hands to hit Baker repeatedly, and that Baker's traumatic brain injury did not prevent her from remembering that Tumey had assaulted her.

{¶27}  Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of witnesses with due deference to the jury's determination, we are not persuaded that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Tumey's felonious-assault convictions. Therefore, the convictions are neither against the manifest weight of the evidence nor supported by insufficient evidence.

{¶28}  We overrule Tumey's first assignment of error.

### B.  The Trial Court Did Not Err by Failing to Merge Tumey's

**Felonious-Assault Convictions**

**1.  Standard of Review**

{¶29}  In his second assignment of error, Tumey contends that the trial court erred by rejecting his request to merge his felonious-assault convictions for purposes of sentencing because they were allied offenses of similar import.

{¶30}  The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution. This constitutional protection prohibits multiple punishments for the same offense in the absence of a clear indication of contrary legislative intent. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *Whalen v. United States*, 445 U.S. 684, 691–692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

{¶31}  The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the

indictment or information may contain counts for all such offenses, and the

defendant may be convicted of all of them.

{¶32}   Appellate courts apply a de novo standard to review a trial court's determination

of whether offenses constitute allied offenses of similar import requiring merger under R.C.

2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *State*

*v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio-2967, ¶ 7. Merger is a sentencing question

where the defendant bears the burden of establishing his entitlement to the protection of R.C.

2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

### 2.  Analysis

{¶33}   In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme

Court of Ohio clarified the appropriate analysis to determine whether two or more offenses

merge under R.C. 2941.25. "In determining whether offenses are allied offenses of similar

import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the

conduct, the animus, and the import." *Id*. at paragraph one of the syllabus. "Under R.C.

2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the

offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar

import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct

shows that the offenses were committed with separate animus." *Id*. at paragraph three of the

syllabus.

{¶34}   Tumey contends that the trial court erred by denying his request to merge his four

convictions for felonious assault because the evidence presented at trial was insufficient to

establish any discernible time period or other distinction to support a finding of guilt and

separate sentences for four separate assaults.

{¶35}  We reject Tumey's contention because the evidence here establishes that the four charges of felonious assault were committed separately. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense[s]." *Ruff* at ¶ 26; *State v. Gillman*, 2015-Ohio-4421, 46 N.E.3d 130, ¶ 23-24 (4th Dist.) (multiple offenses supported separate convictions and sentences when harm from each offense was separate and identifiable); *State v. Gates*, 2015-Ohio-4950, 50 N.E.3d 1027, ¶ 36-37 (5th Dist.) (trial court did not err in overruling defendant's motion to merge two felonious-assault offenses because harm from one offense was separate and identifiable from the other offense).

{¶36}  Here, Tumey committed four separate felonious assaults with separate and identifiable harms to Baker: (1) a broken nose; (2) damage to her left ear; (3) two broken ribs on her left side; and (4) one broken rib on her right side. Tumey readily admits that the primary case he relies on in support of his proposition, *State v. Craig*, 4th Dist. Athens No. 15CA22, 2017-Ohio-4342, is factually distinguishable. (Ant. Brief, p. 17)

{¶37}  We overrule Tumey's second assignment of error.

## C.  Tumey's Trial Counsel did not provide Ineffective Assistance

### By Failing to Call Witnesses

### 1.  Standard of Review

{¶38}  In his third assignment of error, Tumey claims that his trial counsel provided ineffective assistance by failing to call necessary and available witnesses, including exculpatory medical witnesses.

{¶39}  To prevail on his claim, Tumey must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation; and

(2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113. The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697, 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

## 2. Analysis

{¶40} Tumey claims that his trial counsel was ineffective because they failed to present witnesses supporting his alibi, Baker's motive to lie, and independent medical testimony concerning the lack of injuries to his hands.

{¶41} Tumey's claim is meritless. First, " 'counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.' " *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 203, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). " 'Because calling witnesses is within the realm of trial tactics, defense counsel did not have a duty to call an expert witness.' " *State v. Delawder*, 4th Dist. Lawrence No. 14CA12, 2015-Ohio-1857, ¶ 34, quoting *State v. Goza*, 8th Dist. Cuyahoga No. 89032, 2007-Ohio-6837, ¶ 58.

{¶42} Moreover, there is no evidence in the record that these expert and alibi witnesses were available or that their testimony would have benefitted Tumey or been something more than merely cumulative of evidence already elicited, be it through counsel's vigorous cross-examination of Baker or otherwise. Under these circumstances, Tumey cannot establish a reasonable probability of a different outcome. *See Delawder* at ¶ 35 ("we cannot speculate about

testimony that was not presented or proffered at trial"); *State v. White*, 8th Dist. Cuyahoga No. 101576, 2017-Ohio-7169, ¶ 14 ("the mere failure to call [alibi] witnesses does not render counsel's assistance ineffective absent a showing of prejudice"). At best, Tumey is basing his ineffective-assistance claim on speculation that evidence outside the record would establish a reasonable probability of a not-guilty verdict on the felonious-assault charges; but postconviction relief rather than direct appeal is the proper vehicle to raise an ineffective-assistance claim premised on evidence outside the record. *See State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 37, citing *State v. Hampton*, 4th Dist. Lawrence No. 15CA1, 2015-Ohio-4171, ¶ 28.

{¶43} Finally, Tumey's reliance on *State v. Yarber*, 102 Ohio App.3d 185, 656 N.E.2d 1322 (12th Dist.), is misplaced. In that case, the court found that trial counsel was ineffective because he failed to object to leading questions, did not question the alleged rape victim concerning inconsistencies in his statements or discuss these inconsistencies during closing argument, mounted insubstantial cross-examination that elicited responses helpful to the prosecution, and made objections and asked questions that were confusing and made no sense; the representation represented a "complete dereliction of duty." *Id.* Conversely, here, Tumey's trial counsel subjected the victim to vigorous cross-examination, including her alleged inconsistent statements and her motives to potentially falsify her allegations against him. His trial counsel's performance was not tantamount to a "complete dereliction of duty."

{¶44} Because Tumey has not established a viable claim of ineffective assistance of his trial counsel, we overrule his third assignment of error.

### D.  Tumey Waived his Speedy-Trial Claim

{¶45} In his fourth assignment of error, Tumey argues that his case should have been dismissed because it was not brought to trial within the statutory speedy-trial limits of R.C. 2945.71.

{¶46} R.C. 2945.71(B) requires that an accused file a motion to dismiss raising this speedy-trial issue at or before the commencement of trial. *State v. Powell*, 4th Dist. Ross Nos. 17CA3586 and 17CA3587, 2018-Ohio-1276, ¶ 22; *State v. Ross*, 4th Dist. Ross No. 04CA2780, 2005-Ohio-1888, ¶ 20. Because Tumey did not timely file a motion to dismiss based on his speedy-trial claim, he waived it. *Powell* at ¶ 23; *Ross* at ¶ 20.

{¶47} We overrule Tumey's fourth assignment of error.

### E.  The Cumulative-Error Doctrine is Inapplicable

{¶48} In his fifth assignment of error, Tumey asserts that cumulative errors deprived him of a fair trial and require a reversal of his convictions.

{¶49} "Under the cumulative-error doctrine, 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.' " *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶50} We reject Tumey's assertion because "[t]he doctrine is not applicable * * * as we do not find multiple instances of harmless error." *Garner* at 64; *State v. Hunt*, 4th Dist. Scioto No. 17CA3811, 2018-Ohio-4183, ¶ 97.

{¶51} We overrule Tumey's fifth assignment of error.

### IV. Conclusion

{¶52}  The trial court did not commit error in convicting and sentencing Tumey on his four felonious-assault counts. Having overruled all of his assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

By: _____
    Marie Hoover, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**