[Cite as *State v. Nussbaum*, 2024-Ohio-4688.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          : CASE NO. 23CA20

    v.                           :

TIMOTHY NUSSBAUM,                       : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Pat Story, Middleport, Ohio, for appellant[1].

Andrew Noe, Gallipolis City Solicitor, Gallipolis, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED:9-20-24
ABELE, J.

{¶1} This is an appeal from a Gallipolis Municipal Court judgment of conviction and sentence. Timothy Nussbaum, defendant below and appellant herein, assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED BY FAILING TO BRING
> APPELLANT NUSSBAUM TO TRIAL WITHIN NINETY DAYS
> FOR THIS FIRST-DEGREE MISDEMEANOR OFFENSE AS
> REQUIRED BY OHIO'S SPEEDY TRIAL ACT."

_____

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"APPELLANT NUSSBAUM FAILED TO RECEIVE THE
EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN THAT
COUNSEL FAILED TO OBJECT TO THE FAILURE TO
BRING HIM TO TRIAL WITHIN NINETY DAYS AS
MANDATED BY OHIO'S SPEEDY TRIAL ACT FOR A
FIRST-DEGREE MISDEMEANOR."

{¶2} On February 14, 2023, a complaint charged appellant with domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The complaint alleged that appellant struck his girlfriend Stephanie Cangemi's child, I.B., "in the abdomen, hip and upper thigh with a belt, leaving multiple marks and bruising, causing physical harm." On February 17, 2023, appellant waived a hearing on the motion for a domestic violence temporary protection order, and the trial court issued a temporary protection order.

{¶3} Appellant entered a not guilty plea, and the trial court charged time to appellant due to a pretrial continuance request. Appellant requested a court-appointed attorney, and the trial court appointed counsel on the same day. On March 6, 2023, appellant sought a continuance, and the trial court granted the continuance the same day and rescheduled the matter to April 6, 2023. On April 6, 2023, the trial court charged time to appellant due to pretrial/continuance request and set the final pretrial for May 11, 2023 and the trial date for June 15, 2023. On May 11, 2023, the trial court set a new trial date of July 6, 2023, checked the box

"Time charged to defendant due to pre trial/continuance request," and underlined continuance request.

{¶4} On July 6, 2023, the trial court's entry contained a checked box "Time charged to defendant due to pretrial/continuance request" and again underlined "continuance request" and reset the trial for August 17, 2023. At the bottom of the entry, the court wrote, "while in the process of taking Def's plea, he indicated he was not guilty of the elements of the offense. Def's witnesses were not present requiring a continuance."

{¶5} On July 14, 2023, the State filed a motion to continue and stated that appellee's witnesses "are unavailable on this date [August 17, 2023] due to having to be back to school for mandated training. Defense has no objection." The same day, the trial court continued the bench trial to September 14, 2023 and stated, "this case will now be beyond time limits/no more continuances."

{¶6} At the September 14, 2023 bench trial, Gallia County Sheriff's Detective Shallon Schuldt and Gallia County Job and Family Services Child Protective Services Caseworker Kristen Browning testified that they met with Rio Grande Elementary Principal Miranda Fortner on February 8, 2023 and observed bruises on five-year-old kindergartner I.B. I.B.'s siblings informed them that "[I.B.] gets whipped with a belt." Later that day, Detective Schuldt and Browning visited the family's residence and met with

appellant and Ms. Cangemi.  When Schuldt and Browning told appellant they came to investigate I.B.'s bruises, at first, appellant "did admit that he whipped him, but denied that he had used a belt and then Kristen had told him that there were linear bruises that appeared to be belt marks.  And he admitted um, that he whipped [the child] with a belt."

{¶7}  Rio Grande Elementary Kindergarten Teacher Kelly Mayes testified that while on lunch duty on February 8, 2023, she observed I.B. raise his hand and "when his shirt lifted up I saw bruising."  Mayes explained, "I asked him what happened and um, then he said that he got beat with a belt."  Mayes testified that if she moved I.B.'s behavior clip from green to yellow, orange, or red, "he would be very upset and ... would say I don't want to go home, I'm going to get in trouble."  Mayes stated that, "several times [I.B.] acted like he was scared to go home."  In the days before Mayes observed the bruises, Mayes sent a note home because I.B. threatened to bring a gun to school and shoot another student.

{¶8}  Rio Grande Elementary School Nurse Mary Phoenix testified that Mayes brought I.B. to the clinic on February 8, 2023, and she observed "wrap around bruises ... wrapped around his body and in several places it looked like finger marks.  You could put your fingers there and match them up with fingerprints... [t]hey were various colorations too and I asked [I.B.] when this happened, he

said two days ago, which would have been the Monday before.  That would explain the different colors... Some of that was deep tissue bruising."  Phoenix stated that when she inquired about the bruising, I.B. stated, "[appellant] gave him a butt whipping because he got a yellow at school."

{¶9}  Appellant testified in his defense and stated that he and I.B.'s mother had been together for nearly five years, and I.B. lives with them most of the time.  Initially, appellant denied that he disciplined I.B., but after appellant learned that I.B. threatened another student, he took no action other than discuss the situation with Stephanie and go to the gym and discuss the situation with his friend, Devon Stroop.  Later that night, appellant "took [I.B.] to the bedroom and I bent him over my knee and I gave him a spanking."  Appellant acknowledged that he used a belt "[t]o teach [I.B.] a lesson."

{¶10} Devon Stroop testified that he is a friend of appellant and spoke with him on February 6 at the gym.  Appellant told Stroop that I.B. "threatened to bring a gun to school and kill another little kid."  Stroop said appellant did not say how he planned to handle the behavior, but described appellant as "calm," and said he saw no signs that appellant intended to hurt I.B.

{¶11} The trial court's September 14, 2023 entry states "Defendant enters a plea of "not guilty."  "Verdict Trial Date

October 26, 2023, 10:15 a.m."  At the bottom, the court wrote, "State's Exs. A, B & C admitted without objection.  The court takes the matter under advisement & the parties may submit briefs, if desired, by 9-28-23."

{¶12} On October 26, 2023, the trial court found appellant guilty of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor.  A separate October 26, 2023 entry states that: (1) the court found appellant guilty, (2) appellant is able to pay financial sanctions/costs, (3) appellant earned 4 days jail credit, and (4) at the bottom, the court wrote "The court considered all R.C. 2929.21 & .22 factors prior to sentencing extensive DML Recons.  Def. advised of rights of appeal regarding the verdict & sentencing."  The trial court sentenced appellant to (1) serve a 180-day jail term, (2) a domestic violence sentencing enhancement, and (3) 4 days credit for jail served.  This appeal followed.

I.

{¶13} In his first assignment of error, appellant asserts the trial court erred when it failed to bring him to trial within 90 days for this first-degree misdemeanor offense.  Specifically, appellant contends that he did not waive his speedy trial rights, and the trial court granted a crucial extension of the trial date after the expiration of the R.C. 2945.71 time limit.  In his second

assignment of error, appellant contends that counsel performed deficiently when he failed to file a motion to dismiss based upon a speedy trial violation.  Because the two assignments of error are interrelated, we address them together.

{¶14} In general, a reversal of a conviction for ineffective assistance of counsel requires an appellant to show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Myers*, 2018-Ohio-1903, ¶ 183; *State v. Powell*, 2012-Ohio-2577, ¶ 85.  "Failure to establish either element is fatal to the claim."  *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.).  Moreover, if one element is dispositive, a court need not analyze both.  *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶15} In the case sub judice, we believe that appellant cannot establish that counsel's performance in failing to file a motion to dismiss based on a speedy trial violation was deficient because the filing of such a motion would have proven fruitless.  In *State v. Ross*, 2005-Ohio-1888, (4th Dist.), this court examined this issue and held that defense counsel's failure to raise meritless issues does not constitute ineffective assistance of counsel.  *Ross* at ¶ 9, citing *In re Carter*, 2004-Ohio-7285 (4th Dist.), citing *State v. Hill*, 75 Ohio St.3d 195, 211 (1995), and *State v. Close*, 2004-Ohio-

1764, ¶ 34 (4th Dist.); *see also State v. Sessom,* 2024-Ohio-130, ¶ 22 (3d Dist.), *State v. Brown*, 2018-Ohio-4939, ¶ 11 (12th Dist.).

**{¶16}** In *Ross,* the defendant claimed that his trial counsel performed deficiently by failing to file a motion to dismiss based upon a speedy trial violation. *Id.* at ¶ 7. We observed that no dispute existed that the State failed to try Ross for his felony charges within 270 days, as per R.C. 2945.71(C)(2). However, we characterized the delays and continuances as reasonable. *Id.* at ¶ 13, and observed that appellant's constitutional speedy trial claim was also without merit. *Id.* at ¶ 15.

**{¶17}** R.C. 2945.73(B) states, "*[u]pon motion made at or prior to the commencement of trial*, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." (Emphasis added.) Thus, the statute requires the accused to file the motion before trial. *State v. Powell*, 2018-Ohio-1276, ¶ 22, citing *Ross* at ¶ 20; *State v. Thompson*, 97 Ohio App.3d 183, 186 (6th Dist. 1994). In the case at bar, because appellant did not file a motion to dismiss the charge for an alleged speedy trial violation during the trial court proceedings that failure to do so results in a waiver of the issue on appeal. *Powell* at ¶ 23; *Ross* at ¶ 20 (appellant's speedy trial challenge waived where he did not timely move to dismiss the case on speedy trial grounds in the

trial court). *See also State v. Tumey*, 2019-Ohio-219, ¶ 46 (4th Dist.) (because defendant did not timely file a motion to dismiss based on his speedy-trial claim, he waived the claim); *State v. Bishop*, 2003-Ohio-1385, ¶ 16 (the speedy trial statute requires the accused to make a motion).

{¶18} Similarly, in the case sub judice, because appellant did not timely file a motion to dismiss based on his speedy trial claim, he waived that issue. Speedy trial rights are not self-executing. *See Partsch v. Haskins,* 175 Ohio St. 139, 140 (1963)(requiring affirmative action on the part of the accused before a constitutional speedy trial challenge may be made); *State v. Trummer*, 114 Ohio App.3d 456, 470-471 (applying *Partsch* and requiring affirmative action on the part of the accused before a statutory speedy trial challenge may be made); *Bishop, supra*, at ¶ 16 (because constitutional and statutory rights are not "self-executing" rights, trial court had no obligation or duty to sua sponte dismiss charges on speedy trial grounds). Consequently, we conclude that because appellant did not timely file a motion to dismiss based upon a speedy trial violation, he waived speedy trial for appellate review.

{¶19} Moreover, even if appellant had not waived his right to raise the speedy trial issue on appeal, we believe that his claim is without merit. Ohio's speedy trial provisions, R.C. 2945.71 to

2945.73, "constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor." *State v. Pachay*, 64 Ohio St.2d 218, syllabus (1980). States "are free to prescribe a reasonable period consistent with constitutional standards." *Barker,* 407 U.S. at 523. Thus, R.C. 2945.71 designates specific time requirements for the state to try an accused. *State v. Hughes*, 86 Ohio St.3d 424, 425 (1999). In the case at bar, R.C. 2945.71(B)(2) requires the State to bring a person accused of a first-degree misdemeanor to trial within 90 days of the individual's arrest.

{¶20} Generally, the 90-day speedy trial time period clock begins the day after a defendant's arrest. *State v. Davis*, 2013-Ohio-5311, ¶ 21, citing R.C. 1.14 and Crim.R. 45(A). "Two key concepts direct how a court must charge the days when calculating a potential speedy trial violation: waiver and tolling." *State v. Williams*, 2023-Ohio-1002, ¶ 16 (10th Dist.); *State v. Calo-Jimenez,* 2023-Ohio-2562, ¶ 18 (1st Dist.). "A defendant's express waiver of a right to a speedy trial allows additional time at the defendant's request, whereas the automatic tolling of time * * * operates to protect the state's ability to adequately prosecute persons who have committed crimes." *State v. Blackburn*, 2008-Ohio-1823, ¶ 21.

{¶21} "Tolling occurs by operation of law under R.C. 2945.72 under certain circumstances and the defendant is not required to agree to the tolling of time," *Williams* at ¶ 16; *Calo-Jimenez* at ¶ 19, such as discovery requests, motions by the defendant, continuances granted on the defendant's own motion, and any reasonable continuances granted other than upon the defendant's motion. *Id.*, citing R.C. 2945.72(E) and (H).

{¶22} In the case sub judice, the State contends that appellant waived his right to speedy trial multiple times and did not revoke that waiver. Generally, a criminal defendant may waive his or her speedy trial rights. *See, e.g., State v. King*, 70 Ohio St.3d 158, syllabus (1994); *State v. O'Brien*, 34 Ohio St.3d 7, 9 (1987), citing *Barker*, 407 U.S. at 529. However, "[t]o be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." *King*, syllabus.

{¶23} In the case at bar, the trial court's April 6, 2023 entry contained a checkmark next to the box "Time charged to defendant due to pre trial/continuance request," a checkmark next to the box "final pre trial 5-11-2003," and a checkmark next to the box "Speedy trial waived." The trial court's May 11, 2023 entry contains a checkmark next to the box "Time charged to defendant due to pre trial/continuance request (with continuance request

underlined)," lists a trial date of July 6, 2023, and contains a checkmark next to the box "Speedy trial waived." The trial court's July 6, 2023 entry that indicated "while in the process of taking Def's plea, he indicated he was not guilty of the elements of the offense. Def's witnesses were not present, requiring a continuance," contains a checkmark next to the box "Speedy trial waived." Moreover, each of the three entries referenced above contains appellant's signature. A trial court speaks through its journal entries, *see State v. Bonnell*, 2014-Ohio-3177, ¶ 29; *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 455 (2000) and here the journal entries reflect that appellant waived his right to speedy trial on at least three occasions with no indication of revocation.

**{¶24}** On July 14, 2023, appellee's continuance motion stated that appellee's witnesses "are unavailable on this date [August 17, 2023] due to having to be back to school for mandated training. Defendant has no objection." On July 14, 2023, the trial court's entry continued the trial to September 14, 2023 and stated, "this case will not be beyond time limits/no more continuances." These 63 days would be chargeable to the State. R.C. 2945.72(H). However, as appellee points out, appellant still had a speedy trial waiver on file from the July 7, 2023 entry. Thus, the State argues that even these 63 days do not count against the State. We agree.

{¶25} Consequently, after our review we believe appellant waived for appellate review the issue as to whether his statutory speedy trial rights were violated.  Moreover, it appears that appellant expressly waived his speedy trial rights during the trial court proceeding.

{¶26} Accordingly, based upon the foregoing reasons, we overrule both of appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.